IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BAHRI BEGOLLI,

                                                                   OPINION AND ORDER

               Plaintiff,

                                                                   11-cv-380-bbc

    v.

THE HOME DEPOT,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

    In this civil case for money damages for discrimination in hiring, defendant The Home Depot has been encountering difficulties in obtaining discovery from plaintiff Bahri Begolli. United States Magistrate Judge Stephen Crocker held a hearing on discovery on August 30, 2013 and issued an order denying plaintiff's motion to quash certain third party subpoenas served on his service providers, granting defendant's motion to compel discovery with small exceptions, explaining to plaintiff that he could refuse to provide his health care records to defendant but doing so would constitute a waiver of any claim for damages based on physical, mental or emotional injuries and warning him that failure to comply in timely fashion to the magistrate judge's order on discovery could result in sanctions, including dismissal of his suit. Dkt. #91.

    Apparently, the order did not convince plaintiff of the need to provide materials sought by defendant or to cooperate in the taking of his deposition. Defendant has now

filed three motions for court orders: a motion for sanctions, dkt. #94; a motion to expedite the motion to amend the current scheduling order, to require plaintiff to appear for additional time to complete his deposition and to appoint a special master to insure that plaintiff complies with his discovery obligations, dkt. #99; and a supplemental motion for sanctions, dkt. #107.  Plaintiff has moved to quash non-party subpoenas, dkt. #113.

1. Defendant's motion for sanctions - dkt. #94

Defendant contends that plaintiff has failed to comply with the magistrate judge's order to supplement his response to defendant's discovery requests by September 13, 2013. Dkt. #91.  According to defendant, plaintiff supplemented his response on September 16, 2013, but his response was still incomplete and he continues to withhold information that the magistrate judge had directed him to turn over.  For example, he has neither produced medical records of doctors nor signed medical authorizations, despite defendant's requests to see this potentially relevant evidence.  In addition, plaintiff has refused to supplement his statement of names, addresses and telephone numbers of persons who have knowledge of the facts of this case.  He named a witness, Vate Nicaj, but has been unwilling to provide an address for the witness, although defendant is entitled to depose Mr. Nicaj.

Prior to his scheduled deposition on October 2, 2013, plaintiff had refused to respond in full to defendant's interrogatory no. 6, in which he was asked to identify the sources of his income from 2007 to the present.  He provided a table of his earnings but did not specify the sources of the income, the dates on which he received the income or the amounts he

2

received from various sources. He has refused to answer interrogatory no. 7, asking him about his employment for the past three years, and he has refused to produce any records related to employment for work performed between 2007 and the present. In addition, he did not respond to requests nos. 11 and 19, asking him for documents evidencing admissions he alleged were made by defendant, although defense counsel represents that she explained the requests to him in person. He has refused to provide signed standard authorizations for tax records, employment records, education records and medical information. He sent an employment authorization to defense counsel but it differed from the one the court directed him to sign. Finally, he did not produce his 2011 Wisconsin income tax return, his 2009 federal tax return or his 2007 tax returns, the supporting records for the returns or the documents used to calculate the taxes due.

2. Motion to amend current scheduling order, require plaintiff to appear for additional time to complete his deposition and appoint a special master - dkt. #99

This motion was necessitated by defendant's difficulties in deposing plaintiff at a deposition held on October 2, 2013, a full month after the magistrate judge had explained plaintiff's discovery obligations to plaintiff. According to defendant's counsel, plaintiff arrived more than an hour late (10:18 for a 9:00 start), refused to answer questions with yes or no but instead gave rambling, irrelevant answers, spoke over the examining lawyer, interjected improper objections and refused to answer certain questions. In addition, defendant had to devote deposition time to exploring plaintiff's employment history because

he refused to provide the information before the deposition and during his deposition he disclosed new witnesses who may have knowledge of relevant facts.

3. Supplemental motion for sanctions - dkt. #107

Defendant filed a supplemental motion for sanctions after it learned during plaintiff's deposition that he had made no effort to look for documents showing his efforts to find work and mitigate his damages. In addition, plaintiff did not provide his health care information, persisting in his position that he will wait to decide whether to pursue a claim for emotional distress, despite the magistrate judge's order and warning that waiting was not an option. When he was asked at his deposition whether he was taking any medication that might interfere with his ability to testify, he refused to answer, saying that he was not going to talk about his health. Dep. trans., dkt. #105, at 14-15.

Although plaintiff says that on August 27, 2007, he was out of state in Michigan visiting Vate Nicaj, he refuses to disclose Nicaj's address. (He did reveal Nicaj's telephone number after he was ordered to do so by the magistrate judge. Dkt. #91 at 1). This information bears on the timeliness of plaintiff's June 26, 2008 filing of his discrimination complaint. Defendant says that its employee, Randi Kiel, then a regional human resources manager with defendant, called plaintiff and told him that it had decided not to offer him the job. Plaintiff denies this, saying that defendant never called him on August 27, 2007, to tell him he was not being hired and could not have done so because he was either in Michigan or on his way there at the time of the alleged call.

Also at his deposition, plaintiff refused to answer certain questions about his wife, such as whether she had made the trip to Michigan with him, and when he did answer, he gave only unhelpful answers. Dep. trans., dkt. #105, at 145. An example of his responses follows:

> Q. . . . But you don't remember how [your wife] got there, right?
>
> A. She probably got somewhere. She did not fly. She's not [a] bird. We had two cars.
>
> Q. Did she drive?
>
> A. My wife?
>
> Q. Yes.
>
> A. Drive. So what?
>
> Q. Did your wife drive to Vate's in 2007 to join you?
>
> A. I don't know. Ask her.

Rudolph Aff. ¶ 12 & Exh. A at 177-178.


4. Plaintiff's response

In opposition to defendant's motions, plaintiff contends that he responded in full to all of the orders "to the extent possible, Plt.'s Resp., dkt. #106, at 1, that he thinks defendant has all the information it needs, id. at 2, and that he is not asking for emotional or medical damages so defendant does not have the right to ask for records about his health. He adds, however, that he may ask for such damages in the future if the extension of the case leads to any health issue, id. at 2-3. He seems to be withdrawing Vate Nicaj as a witness,

5

id. at 4, but then says that defendant could cross examine Nicaj on the basis of his testimony at the Wisconsin Equal Rights Division hearing in 2010. Id. at 5. Plaintiff disputes defendant's need to know his sources of income or his employment history, saying that defendant has all it needs to know if it knows the wages of a master electrician, id. at 5. As for tax records, he says that he has turned over to defendant every tax document in his possession. He concludes by saying that he believes he has turned over 95% of the requested discovery to defendant, whereas it has turned over less than 20%.

A good portion of plaintiff's arguments and objections seem to stem from his unfamiliarity with the legal system and with the discovery process in particular. It is not surprising for litigants to chafe at the broad, seemingly endless requests for documents, authorizations and relevant information that are common in discrimination actions. Represented litigants have the benefit of someone to explain the necessity for requests and help with the collection of evidence. Plaintiff is unrepresented and has no one other than the court to explain the rules to him and the reasons for them, which is why the magistrate judge took as long as he did to explain the relevance of the discovery sought by defendant and the necessity for plaintiff to turn over the materials. Hrg. trans., dkt. #92.

Plaintiff may be annoyed about the discovery requests made to him, but he has not shown that any of them are outside the scope of the Federal Rules for Civil Procedure. Defendant is fully justified in asking him to produce tax records, evidence of employment, medical authorizations and records, as the magistrate judge informed him on August 30, 2013 during a telephonic motion hearing. Id. at 3-7. At that time, the magistrate judge gave

6

plaintiff 12 days' additional time to comply with the discovery requests. Despite the magistrate judge's painstaking explanation of the reasons for the discovery requests, the importance of those requests and the potential penalties if plaintiff chose not to produce the discovery, plaintiff has refused to cooperate in discovery. Indeed, he has filed a motion to quash the subpoenas for non-parties served on him.

5. Plaintiff's motion to quash non-party subpoenas, dkt. #113

In this motion, plaintiff says that he considers defendant's subpoenas to certain non-parties intimidating and annoying because the history of his life, his employment record and his history of eventual applications for the job are unnecessary for litigating the action. He objects to providing his family telephone plan because the records involve calls made by or to his wife and she is not involved in this case; the records of the Wisconsin Department of Workforce Development concerning his unemployment insurance, records of his work for Boumatic, PDQ, Target, Language Associations, and of his wife's work at Pizza Hut.

OPINION

At the August 30, 2013 discovery hearing, the magistrate judge tried to explain to plaintiff the need for litigants to follow the rules and why this is particularly true for the party who has "thrown down the gauntlet," dkt. #92 at 7, by starting the litigation process. "They asked the court to intervene and therefore they should expect that the Court will apply the discovery rules as it does in every case." Id. The magistrate judge was correct: a

7

person who calls upon court resources to help him obtain a judgment against another person or institution must expect to be bound by the rules that apply to court proceedings. A plaintiff who ignores or defies the rules risks imposition of a penalty, which may range from monetary sanctions to the loss of a claim or the ultimate penalty of outright dismissal of the case.

Although the magistrate judge spent 55 minutes at the August 30 hearing explaining to plaintiff the importance of such compliance and warning him of the consequences of failing to comply with defendant's need for discovery, plaintiff's litigating posture did not change. He refused to supply information about his past employment, he refused to provide medical information while at the same time refusing to say whether he was waiving his right to ask for mental and emotional damages as a result of defendant's decision not to hire him and he refused to answer questions about the purported Michigan trip. His evasive and belligerent responses to questions at his deposition demonstrated his unwillingness to comply with the norms of discovery.

Plaintiff has been instructed about what he must do (and not do) to keep this case on track, he has been given an extensions of time in which to show that he can comply with legitimate discovery requests from defendant and he has been warned that he risks dismissal of the case if he cannot carry out his responsibilities as a litigant. Despite this, he has shown no indication that he can or will change his ways. He continues to withhold discovery materials and treat deposition questions with contempt. If plaintiff were not representing himself, I would have no hesitation dismissing the case in its entirety.

Under the law of this circuit, courts considering dismissals under Fed. R. Civ. P. 37 must consider whether lesser sanctions are available and effective in achieving the goal of cooperative discovery. Rice v. City of Chicago, 333 F.3d 780 (7th Cir. 2003) ("While it is true that there is no requirement for district courts to impose graduated sanctions, it is well settled in this circuit that the ultimate sanction of dismissal should be involved 'only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailable.'") (internal citations omitted) (quoting Grun v. Pneumo Abex Corp., 163 F.3d 411, 425 (7th Cir. 1998)); see also Ball v. City of Chicago, 2 F.3d 752, 758 (7th Cir. 1993) ("[C]ountless cases say that the district judge should consider the efficacy of a less severe sanction before dismissing a suit for failure to prosecute. . . . 'A court is not necessarily required to take less severe action before imposing the sanction of dismissal, but dismissal should be employed only if the district court has determined that it could not fashion an equally effective but less drastic remedy.'" (internal citations omitted) (quoting Velazquez-Rivera v. Sea-Land Service, Inc., 920 F.2d 1072, 1076 (1st Cir. 1990)). This is particularly true when one of the parties is unrepresented. Therefore, I will give plaintiff one last chance to salvage his lawsuit.

Defendant suggested in its motion to amend the scheduling order, etc., dkt. #99, that the court not only require plaintiff to appear for a continued deposition but appoint a special master to oversee the deposition. Appointing a special master is problematic when the parties cannot share the expense equally. Instead, I will take up defendant's next suggestion, which is to require the parties to hold the deposition in this courthouse, where the magistrate judge

9

is available to rule immediately on any discovery disputes. Defendant is to make arrangements for the deposition with the clerk of court, Peter Oppeneer.

This is plaintiff's last chance. If he does not produce the documents that defendant has requested and the magistrate judge has approved, dkt. #91, the case will be dismissed. This ruling does not apply to medical records and requested waivers; plaintiff's failure to produce these will not be cause for dismissing the entire case, but it will mean that he cannot seek any damages for physical, mental or emotional injuries. If plaintiff does not cooperate with his deposition, the case will be dismissed. To be specific, plaintiff must give Yes or No answers whenever the question can be answered in one word. If he thinks it cannot, he may say that he cannot give a Yes or No answer, but he must then stop and wait for another question. This does not mean that he can simply avoid answering any question he does not want to answer. (If there is a dispute on this point as to any question and answer, the magistrate judge will resolve it.) Plaintiff is not to speak over anyone else; the court reporter cannot record his testimony when this happens. Plaintiff is to curtail his tendency to be flippant and hostile and is to make a genuine effort to answer the questions put to him. If defendant's counsel believe that plaintiff has not complied with these requirements, I will review the transcript and determine whether defendant is correct.

Plaintiff should know that the time for gamesmanship has passed. He has one chance and one chance only to preserve his lawsuit. If he does not comply with the requirements I have imposed, this case will be dismissed in its entirety.

ORDER

IT IS ORDERED that plaintiff Bahri Begolli's motion to quash non-party subpoenas, dkt. #113, is DENIED. A ruling is stayed on defendant The Home Depot's motions for sanctions, dkt. #94, and supplemental motion for sanctions, dkt. #107. Defendant's motion to expedite the motion to amend the current scheduling order, to require plaintiff to appear for additional time to complete his deposition and to appoint a special master to insure that plaintiff complies with his discovery obligations, dkt. #99, is GRANTED as it relates to requiring plaintiff to appear for a continued deposition at the Robert W. Kastenmeier Courthouse at a date and time to be set by defendant in accordance with Fed. R. Civ. P. 30, but no later than November 15, 2013; defendant may accompany the deposition notice with a Rule 34 request to plaintiff to produce documents and tangible things at the deposition; it is GRANTED also as to the amendment of the current scheduling order; a new scheduling conference will be held before the United States Magistrate Judge if the case goes forward; and it is DENIED as to the request for the appointment of a special master.

Entered this 23rd day of October, 2013.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge